UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE S. JOHNSON
Plaintiff

-vs-

CIVIL ACTION
NUMBER     15-308

LOYOLA UNIVERSITY NEW ORLEANS      SECTION
Defendant                                          SECT. L MAG. 4

FILED _____        _____
                                    DEPUTY CLERK

## COMPLAINT

1.

The Plaintiff, Katherine Johnson attended Loyola University as a graduate counseling student August 2002 until December 2004. Plaintiff enrolled at Loyola University New Orleans for the purpose of obtaining a better job, and to earn credits that could transfer to other schools to obtain additional degrees. As the result of Hurricane Katrina in August of 2005, Plaintiff moved to Houston, TX.

2.

In December 2005, the Plaintiff was awarded a grant by the American Counseling Association to continue her graduate education. Plaintiff used grant in January of 2006 to attend a graduate group counseling course. Plaintiff's former employer allowed her to fly back and forward from Houston to New Orleans to attend this class at a public college in Louisiana. Plaintiff received an "A" in this course.

3.

In January of 2007, Plaintiff enrolled into a Family Systems course at Loyola University New Orleans. Once again, her employer allowed her to fly back and forward to New Orleans to attend classes at Loyola; Plaintiff received an "A" in this course. During one of the Plaintiff's trips to New Orleans she met with Assistant R. Professor LeAnne Steen and discussed practicum sites. Assistant Professor Steen stated to Plaintiff that Loyola University had a signed contract with Covenant House of New Orleans allowing her to complete her practicum at this site. Assistant Professor Steen and Plaintiff agreed that Covenant House New Orleans would be her practicum site and Ms. Johnson would start during the summer of 2007.

4.

On May 24, 2007, Plaintiff was contacted by Assistant Professor R. LeAnne Steen, to inform her that she had missed the first practicum class which started on May 23, 2007. Plaintiff informed

1

instructor that she was in Houston, TX and had been given the wrong information by Loyola University New Orleans for the start date of the first class. Plaintiff informed her supervisors of this new information and that she had to leave Houston for practicum class.

5.

On May 30, 2007, a member agency of the Houston Long Term Recovery Team arranged for Plaintiff to move into temporary housing in Baton Rouge, LA for practicum class. During the second class the other two students in the class voted to change the start time of the practicum class from 4:15 p.m. to 5:00 p.m. Plaintiff was very concerned because she tends to be a very punctual and e-mailed the first assignment two weeks ahead of schedule. Plaintiff drove from Baton Rouge to New Orleans to lead group and individual counseling sessions along with other duties at the practicum site. Plaintiff was also asked to keep numerical data on clients she was seeing at Covenant House New Orleans on separate logs. Plaintiff gave this numerical data to Roseanna DiChiro, PsyD., her practicum supervisor during supervision meetings.

6.

Plaintiff completed all assignments, and completed a total of 162.5 hours (140 hours were required by Defendant to pass course). The other two students in the practicum course did not complete all assignments and did not have enough hours to pass the practicum course. On August 8, 2007, Assistant Professor Steen notified the Plaintiff and other students in the practicum course they all received the grade "I" incomplete because the grades were due into the Dean's office by 12 noon on August 8, 2007. The University offices closed at 4:45 p.m. and Professor Steen's class started at 5:00 p.m. Assistant Professor Steen's practicum course was also running one week behind LUNO's summer schedule. Summer school officially ended on August 3, 2007.

7.

During practicum, Plaintiff never received grades or evaluations from Assistant Professor R. LeAnne Steen. Approximately 2 ½ weeks after school ended, Assistant Professor Steen contacted Plaintiff to come to New Orleans because she had evaluated the Plaintiff and wanted to discuss it with her. When Plaintiff arrived Assistant Professor Steen presented her with a South West Texas University evaluation form signed and dated 10/17/1996.[1] This evaluation did not have a key explaining the numbers nor was it a true indication of Plaintiffs' performance. Plaintiff was the only student in class that was subjected to this type of evaluation. Assistant Professor Steen also asked Plaintiff to sign a remediation form modified from the State of Texas that she had personally drawn up on a white sheet of typing paper.[2]

Plaintiff refused to sign it because these documents did not say Loyola University New Orleans, and Plaintiff's GPA was 3.67 (not counting 9 hours of transferred credits, 4.0). When Plaintiff refused to sign it, Assistant Professor Steen immediately dismissed her from the graduate counseling program.

---

[1] See exhibit "19" Southwest Texas University Evaluation Form
[2] See exhibit "20" Remediation Form created by Assistant Professor Steen

8.

Plaintiff immediately left meeting and went to see Acting Dean Lawrence Lorenz. Professor Lorenz was not available so Plaintiff spoke with Assistant Dean Angela Brocato and reported Assistant Professor Steen's unprofessional behavior. On August 22, 2007, (beginning of the fall semester[2]) Assistant Professor Steen changed Plaintiffs' grade to an "F" for the practicum course. Plaintiff was informed by Acting Dean Lorenz via e-mail that he did not see any compelling reason for a hearing and there was no grade standing appeal committee.

9.

Initially, Plaintiff contacted the United States Department of Education, Office of the General Counsel, Ethics Department in Washington D. C. because she believed the Defendants actions were unethical however, she was referred to the United States Department of Education, Office of Civil Rights in Dallas, Texas. Plaintiff filed a complaint with the United States Department of Education Office of Civil Rights, in December 2007. In January 2008, Defendants blocked Plaintiff from registering for graduate school.

10.

On January 24, 2008, Plaintiff and Defendant spent entire day in federal mediation. Plaintiff was instructed by federal mediator not to speak to Defendants. Plaintiff typed on a sheet of paper that she offered to retake the practicum course. Defendants refused to let Plaintiff retake practicum course and requested an extension from the federal mediator in order to make the Plaintiff an offer. During this extended mediation the Defendants offered to change the Plaintiff's grade to a "W" and give $1,400 or award her the degree of "Masters In Education with a Major in Counseling describing the employability, certification and transferability of this education degree in detail[3]. The Defendants did not disclose to either to the Plaintiff or the United States Department of Education Office of Civil Rights that Defendants' Education department closed in 2006 and several Plaintiffs were in Civil District Court suing the Defendants for Breach of Contract related to the closing of the Education Department. The release filed under seal Civil District Court in New Orleans was not witnessed or signed by the federal mediator hired by the United States Department of Education Office of Civil Rights in Dallas, TX. The release filed under seal is devoid of any actual negotiation, and designed to take advantage of the unequal bargaining power between Plaintiff and Defendant.

11.

The attorney hired by the Plaintiff to handle the federal mediation never received the "Masters in Education with a Major in Counseling" degree from Defendants. [4] Plaintiff made numerous unsuccessful attempts to get her education degree from the Defendants and discovered that the Education Department closed in 2006, and Defendants were being sued in New Orleans Civil District Court for breach on contract by several Plaintiffs (Melancon vs. Loyola University, 07-3300, Dermdoy vs. Loyola University, 07-3305 and Doyle vs. Loyola University 07-3303). After discovering this information and unable to get her education degree from Defendants, Plaintiff contacted one of the United States Department of Education investigators (OCR, Dallas,

---

[3] See exhibit "13" Email from Brooke Duncan to Claire Jupiter
[4] See exhibit "3" Letter from Claire Jupiter, March 11, 2008

3

TX) the Texas Coordinating Board of Higher Education, Texas Attorney General's Office and an attorney in Virginia (formerly with the Virginia's Attorney General's Office, The Louisiana Attorney General's Office, The Louisiana Department of Education, the Louisiana Board of Elementary and Secondary Education Certification Department and the other agencies for help. The Texas Attorney General's Office informed Plaintiff that major cause of action is Deceptive Practice and it is unlawful to use this degree in Texas.[5] This degree is also prohibited from use in the states of Hawaii, Nevada, Florida, California and several other states. Plaintiff suffered irreparable harm with no remedy under Louisiana law. Plaintiff contacted a Louisiana State Senator and a former Louisiana Attorney General (without disclosing her situation to them) to assist her to create a law to protect college students in Louisiana from substandard, fictitious and fraudulent college degrees. This law was signed into law by Governor Bobby Jindal on June 17, 2010.[6]

12.

### The GAO Findings.

This pattern of conduct was the subject of hearings conducted by the United States Senate Committee on Health, Labor & Pensions ("HELP Committee") which began on June 4, 2010, in an effort to address various alleged patterns of misconduct by for-profit colleges. An August 4, 2010 report discussed at the hearings revealed that, in an undercover investigation of 15 for-profit colleges, all 15 schools engaged in "fraud, deceptive practices or made misleading statements" to prospective students.[7] The GAO's findings allege misconduct on the part of the 15 schools that include, but is not limited to deceptive and questionable statements regarding the schools' accreditation, graduation rates, prospective employment and salary qualifications, duration and cost of the program and financial aid.[8]

13.

### Common Questions of Law

This case presents questions of law and fact common, but not limited to the following:
   a. Whether Defendants engaged in deceptive, misleading, unfair, fraudulent, or otherwise unlawful practices through their non-disclosure of material facts related to the accreditation, certification of this education degree and transferability of credits;
   b. Whether Defendants engaged in deceptive, misleading, unfair, fraudulent, or otherwise unlawful practices to make misrepresentations and omissions regarding the employability of this degree;
   c. Whether Defendants' conduct constituted fraud, constructive fraud (making a homemade diploma) or negligent misrepresentation, as alleged herein;

---

[5] See exhibit, "18" Texas Penal Code, Deceptive Practice
[6] See exhibit, "1" ACT 206
[7] Statements of Sen. Tom Harkin at For Profit Schools: The Student Recruitment Experience before the S. Comm. on Health, Education, Labor & Pensions, 11th Cong. (2010).
[8] Statements of Gregory Kutz, Second HELP Committee Hearing.

  d. Whether the Defendants' "Masters in Education with a Major in Counseling" was an accredited program;

  e. Whether the release is unconscionable because it was procured by way of the fraudulent and unconscionable conduct described herein and otherwise substantively unconscionable;

  f. Did the Defendants award the degree to the Plaintiff as stated in the release immediately because she needed in for employment purposes;

  g. Did the Plaintiff have the <u>classes required</u> in the State of Louisiana to be awarded a Masters in Education with a Major in Counseling degree;

  h. Whether Plaintiff is entitled to recover actual damages, as a result of Defendants' unlawful practices;

  i. Whether Plaintiff is entitled to recover restitution of the tuition paid to Defendants as result of their unlawful practices;

  j. Whether Plaintiff is entitled to recover punitive damages as result of Defendants unlawful practices;

  k. Whether Plaintiff is entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this lawsuit, and

  l. Whether Plaintiff should be enjoined from making false and misleading representations to students and ordered to properly disclose its lack of an education department and the consequences thereof.

  m. Any other relief that the Court deems proper.

Plaintiff causes of action are: Deceptive Practice, fraud, breach of contract, tortuous interference with contract, conspiracy, supervisory liability, unjust enrichment, violation of Louisiana Administrative Code Bulletin 746, violation of Louisiana Revised Statue 17:2075.

14.

**DECEPTIVE PRACTICE:**

Plaintiff is entitled to a measure of damages because Defendants knew or should have known that its representations of employability, certification and transferability of this degree were false. They were being sued by at least three other Defendants in New Orleans Civil District Court for closing the Education Department in 2006 (<u>Melancon vs. Loyola University</u>, 07-3300, <u>Dermdoy vs. Loyola University</u>, 07-3305 and <u>Doyle vs. Loyola University</u> 07-3303). Defendants intentionally withheld and suppressed material information about the Education Department and this degree. Plaintiff relied on the representations and suffered harm as a proximate result of Defendants' conduct.

The Defendants made multiple fraudulent misrepresentations and omissions during mediation about the value of the degree to the Plaintiff and the United States Department of Education, Office of Civil Rights in Dallas, TX. Plaintiff relied upon these statements. The omissions, misrepresentations, and false and misleading statements about employability and transferability

were material to Plaintiffs' decision to enter into contract with Defendants. These unconscionable aspects, either combined or alone, render the release wholly unenforceable. The Release as result of federal mediation filed under seal in Civil District Court in New Orleans is invalid and not legally enforceable in Louisiana. The Defendants collected fees and compensation from the Plaintiff for the fraudulent, fictitious, substandard or defunct college degree. The described acts are fraudulent business practices because LUNO's representations of employability and transferability are false and likely to deceive the public. Due to the Council on Accreditation of Counseling and Education Related Programs (CACREP) no graduate program in America is able to accept the Plaintiffs' graduate school hours from Loyola University New Orleans. Plaintiff establishes the cause of deceptive practice.

15.

## VIOLATION OF LOUISIANA ADMINISTRATIVE CODE BULLETIN 746.

This degree does not meet the Louisiana Standards for State Certification of School Personnel in Louisiana and cannot be used for employment reasons.[9] Plaintiff is working under a Federally Highly Qualified Status with no degree in either education or counseling. She cannot be paid at the professional level because this fraudulent education degree cannot be used for employment purposes. Plaintiff establishes the cause of action violation of Louisiana Administrative Code.

16.

## BREACH OF CONTRACT

Defendants, Loyola University New Orleans ("Loyola"), never fulfilled its settlement obligations. That is, it has never timely awarded her a "Masters in Education with a Major in Counseling" degree. After, Plaintiff signed the Release, Defendant through their former legal counsel, Brooke Duncan refused to award the Plaintiff the "Masters in Education with a Major in Counseling" degree.[10]

The diploma is not evidence of the degree, and can never be. Moreover, Defendants cannot prove that it has awarded a timely degree. Specifically none of the exhibits to its motion support its contention that it has timely awarded this degree.

Defendants ultimately issued a "Masters of Education with a Major in Counseling Degree (Exhibit B) on October 2, 2008, to Dr. Kvet and claims it mailed it to the Plaintiff's purported address in Texas. The Plaintiff never received it because the Plaintiffs' apartment building and surrounding structures were purchased real estate developers and torn down.

---

[9] "See exhibit "19" Louisiana Administrative Code Bulletin 746, classes required for Education Degrees
[10] See exhibit "3" Letter from Claire Jupiter, March 11. 2008

These are additional breaches of contract:

The initial breach of contract occurred on July 18, 2007. Plaintiff called to inform Assistant Professor Steen that she would be late for class one evening because of medical emergency that required transportation of one of her immediate family members to Hammond, LA. Plaintiff made arrangements with the counseling graduate assistant (in practicum course) to swap counseling hours to help keep everything on schedule for her late arrival to class. Plaintiff showed up at Loyola 15 minutes before her scheduled meeting and was informed by Assistant Professor Steen that she decided to end class early and go home. Plaintiff paid for a certain amount of classes and did not receive them and because of this Plaintiff she is damaged

The second breach of contract is the misrepresentation by Assistant Professor Steen that there was a contract with Covenant House New Orleans and that it was appropriate to use the Ciaccio Crisis Center as a practicum and internship site. There was no such contract, because of this the Plaintiff also suffered. Plaintiff establishes the cause of action breach of contract.

17.

## TORTUOUS INTERFERENCE WITH CONTRACT

By giving false and malicious information, Brooke Duncan, Rodger White, Assistant Professor Steen and the counseling department caused the Defendant to interfere with the student's right to services. Plaintiff establishes the cause of action tortuous interference with contract.

18.

## CONSPIRACY

The Defendant asked the federal mediator for an extension of time and came up with a "creative idea" to award Plaintiff a "Masters in Education with a Major in Counseling" degree. Defendant failed to disclose material facts and/or making material omissions, misrepresentations, and false promises regarding the employability, certification, of this degree and transferability of its credits to other post-secondary colleges and universities that they knew or should have known were false and misleading. Defendant planned to deny Plaintiff of her right to attend/complete a graduate school education in America, as well as violate her Constitutional and Civil Rights. Plaintiff establishes the cause of conspiracy.

19.

## VIOLATION OF LOUISIANA REVISED STATUE 17:2075.

Loyola University, a corporation organized under the laws of this State and domiciled in the City of New Orleans, is authorized to confer upon its students, or upon any person deemed by it

worthy of such distinction, degrees in arts and sciences and all the learned professions such as are granted by other universities in the United States, and to give diplomas and certificates thereof; provided that the curriculum or course of study in the learned professions shall equal that maintained by other standard universities. [11]

There was no Education Department at Loyola University in 2008 therefore, the Masters in Education with a Major in Counseling degree program is not equal to other standard universities, therefore the Defendants do not have the right to award the Plaintiff a fraudulent college degree in exchange for tuition and fees. Plaintiff establishes the cause of violation of Louisiana Revised Statue 17:2075[11].

20.

### UNJUST ENRICHMENT

The Louisiana Supreme Court set forth the following factors to establish unjust enrichment: (1) there must be an enrichment of the defendant: (2) there must be an impoverishment of the Plaintiff; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment or impoverishment, and (5) no other remedy available at law. (Baker v. Maclay Properties Co., 648 So.ed.888, 896 (La. 1995). (citing Minyard v. Curtis Products, Inc., 251 La. 624, 652, 205 So. 2d. 422, 432 (1967); Edmonston v. A-Second Mortgage Co. of Slidell, Inc. 289 So. 2d 116 (La. 1974).

Plaintiff has been unable to return to her home destroyed by Hurricane Katrina because of the costs of the graduate education, travel expenses to New Orleans and legal costs and she is unable to use this education degree in the United States of America. There was no remedy under law until Plaintiff helped to create a law to protect college students. Plaintiff paid money and did not receive credit for the course. Plaintiff establishes the cause of action unjust enrichment.

21.

### FRAUD

Failing to disclose information concerning the fraudulent or substandard college degree which was known at the time of the transaction and the failure to disclose such information was intended to induce the Plaintiff into a transaction in to which the Plaintiff would not have entered had the information been disclosed. Defendant failed to disclose material facts and/or making material omissions, misrepresentations, and false promises regarding the employability, certification, of this degree and transferability of its credits to other post-secondary colleges and universities, that they knew or should have known were false and misleading. Defendants knew that there was no education department and at least three Plaintiffs were suing them in Civil

---

[11] See exhibit "20" Louisiana Revised Statue 17:2075

District Court for breach of contract regarding closing the Education Department in 2006. Plaintiff and the United States Department of Education Office of Civil Rights in Dallas, TX were unaware of these facts. Defendants collected money and fees for fraudulent college degree. As recipients of Federal and State funds, Loyola representatives are required to fully disclose the true value of their degrees. This degree does not meet the qualifications for school personnel at any school in the State of Louisiana and is prohibited from use in several states.

23.

## DAMAGES

As a result of the breach of contract, petitioner seeks and is entitled to damages for the following losses:

A. Loss of salary and income and benefits and emoluments of employment, present and future;
B. Petitioner seeks damages for the manner that Loyola University has treated her, including but not limited to humiliation, loss of esteem and reputation in the academic and professional community, specifically and generally. Defendants actually published Plaintiff's name in the Times Picayune in several parishes on May 10, 2008 and gave out programs to thousands of people in the New Orleans Superdome informing them Plaintiff had graduated from college with a Masters of Science degree.
C. College credit for use of Plaintiff's numerical data in grant during practicum, college credit for Youth Violence Prevention Program whereas, Former Acting Provost Rodger White and a 2L student served as consultants while Plaintiff was dismissed from graduate program, and college credit counseling minors in Louisiana State Custody while trying to pursue this degree;
D. Damages for bad faith breach of contract;
E. Compensations for loss and reduction of retirement benefits;
F. Compensation for stress, emotional distress and worry;
G. General and compensatory damages;
H. As a result of Loyola's actions, it was necessary for petitioner to secure the services of an attorney to represent her in filing this lawsuit. Petitioner seeks reimbursement of all legal fees and expenses.
I. Compensation for loss of material, non-pecuniary benefits.
J. Such other damages as will be shown at trial.

WHEREFORE, petitioner Katherine Johnson prays that after due proceedings, there be judgment in her favor and against defendant Loyola University New Orleans for compensation for all damages and losses, plus any and all other damages and relief to which she may be entitled as a matter of law, for all costs of these proceedings, and attorney fess, with legal interest calculated from date of legal demand.

Respectfully submitted,

*Katherine S. Johnson*
KATHERINE S. JOHNSON       504-458-3848
P. O. Box 4224
New Orleans, LA  70178
Plaintiff

PLEASE SERVE:
(with First Supplemental and
Amending Petition for Damages, and Affidavit)

IRWIN FRITCHIE URQUHART & MOORE LLC
RICHARD E. MCCORMACK (#14194)
STEPHEN G. A. MAYERS (#29999)
KELLY G. JUNEAU (#30573)
400 Poydras Street, Ste. 2700
New Orleans, LA  70130
Telephone (504) 310-2100