UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHERINE S. JOHNSON | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 15-308 |
| | * | |
| LOYOLA UNIVERSITY | * | SECTION: "L" (4) |
| NEW ORLEANS | * | |

ORDER & REASONS

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and pursuant to the doctrine of *res judicata*. (R. Doc. 13). Having reviewed the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

I.  BACKGROUND

This action arises out of a series of events that occurred between Defendant, Loyola University New Orleans ("Loyola"), and Katherine Johnson ("Ms. Johnson"), a former Loyola graduate student. On December 12, 2007, Ms. Johnson filed a discrimination complaint against Loyola alleging that she received a failing grade in a practicum course due to age and race discrimination by Loyola and Loyola's employee, Assistant Professor Dr. Leanne Steen ("Steen"). Ms. Johnson's complaint was referred to the U.S. Department of Education, Office for Civil Rights ("OCR"); the OCR conducted an investigation and, on July 15, 2009, notified Loyola that there was insufficient evidence of unlawful discrimination.

Nevertheless, following negotiation and mediation by counsel for both parties, Ms. Johnson and Loyola entered into a confidential release on February 18, 2008, pursuant to which Plaintiff agreed to release and discharge Loyola and all of its affiliates from all causes of action

in exchange for the award of a Master's degree in Education with a Major in Counseling ("Degree"). The diploma evidencing the Degree was initially mailed to Ms. Johnson on June 13, 2008. Although it is unclear precisely if and when Ms. Johnson received the diploma, she must have seen it or had access to it prior to her sending the following email expressing her dissatisfaction with the Degree. Specifically, on June 16, 2008, Ms. Johnson emailed Roger White, Vice Provost for Academic Programs at Loyola, asking if "there [was] a problem with the degree" as the settlement called for a "Masters degree in Education with a major in Counseling" and the degree issued stated "Master of Science with Major in Graduate Education." Roger White responded that he would "check on the wording of the degree and get back to her." (R. Doc. 24 at 32). Thereafter, Ms. Johnson discovered that Loyola's Education Department closed and, sometime before August 6, 2008, Ms. Johnson expressed concern to Loyola that the diploma she received was neither genuine nor verifiable. On August 6, 2008, Loyola mailed another copy of the diploma, along with a copy of the confidential release, to then-counsel for Ms. Johnson. In the accompanying letter, Loyola dispelled Ms. Johnson's concerns stating the following:

> The Masters of Education degree is in the inventory of degrees that Loyola is authorized to award and it has been awarded in the past. Although Loyola's education department has been discontinued, that does not affect Loyola's authority to offer the degree which Ms. Johnson has earned by virtue of meeting the requirements for the degree in terms of hours of graduate course work needed. [Loyola] is not currently accepting students into a Masters of Education Program but [it] continues to be authorized to use the degree should [it] so choose, as [it] did in this case to settle her complaint.

(R. Doc. 24 at 33).

In August 2008, Plaintiff filed a complaint with the Louisiana Licensed Professional Counselors Board of Examiners against Steen. On October 2, 2008, Loyola issued a third transcript to Dr. Edward Kvet from Loyola's Office of Academic Affairs, indicating the correct

degree that had been awarded to Ms. Johnson—a Master of Education with a major in counseling—in accordance with the express terms of the confidential release. (R. Doc. 15-5 at 5). On December 9, 2008, Loyola sent a letter to Ms. Johnson putting her on notice that she was in violation of the terms of the confidential release and informing her that it intended to retract its award of the Degree if she did not withdraw the complaint against Steen by December 15, 2008. Ms. Johnson did not withdraw her complaint against Steen and, on December 22, 2008, Loyola sent another letter to Ms. Johnson stating it was rescinding the Degree. In a response letter to Loyola, Ms. Johnson stated that Loyola violated the release by not awarding her the degree of "Masters in Education with a Major in Counseling." Ms. Johnson alleged that she received a "worthless" sheet of paper, which read "'Masters of Education,' not 'Masters in Education with a Major in Counseling.'" Notably, however, the Loyola transcript included in the exhibits attached to Ms. Johnson's response to the instant motion reads as follows:

> Degrees Awarded:
> Master of Education
> College of Social Sciences
> Major: Counseling

On February 2, 2015, Ms. Johnson filed this Complaint against Loyola, alleging breach of contract, deceptive practice, tortious interference of contract, conspiracy, fraud, supervisory liability, unjust enrichment, violation of Louisiana Administrative Code Bulletin 746, and violation of La. Rev. Stat. § 17:2075. (R. Doc. 1) Additionally, on June 15, 2009, Ms. Johnson filed suit against Loyola in the Civil District Court for the Parish of Orleans, alleging fraud, misrepresentation and breach of contract, and seeking specific performances and damages. On July 11, 2015, Ms. Johnson filed a First Supplemental and Amending Petition for Damages adding, *inter alia*, claims for tortious interference of contract and violation of Louisiana Administrative Code Bulletin 746. (R. Doc. 13-3). Both the petition filed in state court and the

complaint filed in federal court revolve around the alleged breach of contract relating to the degree and the confidential release.

On July 18, 2011, Judge Robin M. Giarrusso of the Civil District Court of the Parish of New Orleans granted Loyola's Motion for Summary Judgment, dismissing Ms. Johnson's claims against Loyola. (R. Doc. 13-4). On August 8, 2012, the Louisiana Fourth Circuit Court of Appeal affirmed the trial court's judgment in favor of Loyola on Ms. Johnson's claim for specific performance and reversed the trial court's judgment insofar as it dismissed all of Ms. Johnson's claims. (R. Doc. 13-5). The issue of "whether Loyola's performance pursuant to the Release was timely, such that its delay in submitting a correct transcript showing the actual degree conferred cause Ms. Johnson to sustain damages" was remanded, and is still pending before the Civil District Court for the Parish of New Orleans. *Id.* at 13.

## II. PRESENT MOTION

In its Motion to Dismiss, Loyola set forth two arguments: (1) the Complaint fails to set forth the grounds for this Court's subject matter jurisdiction and (2) the Complaint is a re-hashing of the same claims that the Louisiana Fourth Circuit Court of Appeal previously dismissed on the merits ("First Action") and, as such, is barred by *res judicata*. Johnson opposes the motion, arguing that there is federal jurisdiction under 42 U.S.C. § 1983, 5 U.S.C. § 552, and 20 U.S.C. § 1011. Ms. Johnson argues further that this Court has supplemental jurisdiction over her claims pursuant to 28 U.S.C. § 1367. Ms. Johnson does not address Loyola's *res judicata* argument except to state that the First Action addressed only her claim for specific performance and did not address her claim for damages. (R. Doc. 16 at 1).

## III. 12(b)(1) STANDARD AND FEDERAL QUESTION JURISDICTION

a. **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001). When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *Cloud v. United States,* 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002).

Federal question jurisdiction is invoked when a plaintiff properly pleads a claim arising under the Constitution or the laws of the United States. *See* 28 U.S.C. § 1331; *see also Bell v. Hood,* 327 U.S. 678, 681–85, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.' " *In re HotHed, Inc.,* 477 F.3d 320, 323 (5th Cir.2007)(quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 632, 366 (5th Cir.1995)). "The plaintiff is 'the master of her complaint,' and, as such, a determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." *Medina v. Ramsey Steel Co.* 238 F.3d 674, 680 (5th Cir.2001)(internal quotation marks omitted).

Federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Olivier, citing Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Under the well-pleaded complaint rule, the plaintiff is

the master of the claim and may avoid federal jurisdiction by exclusively relying on state law, even where a federal claim is also available. *Olivier* at 584, *see also Hoskins v. Bekins Van Lines,* 343 F.3d 769, 772–73 (5th Cir.2003)("As we have explained, "[a] plaintiff with a choice between federal-and state-law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded.").

    b. **Analysis**

Although Ms. Johnson checked the "federal question" box on the Civil Cover Sheet filed with her Complaint, her Complaint neither contains a jurisdictional statement nor does it specify the grounds for federal court jurisdiction over her claims. While Ms. Johnson's *pro se* complaint entitles it to a liberal reading, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Complaint, even with a liberal reading, fails to establish a basis for subject matter jurisdiction. The Complaint does not cite to any specific Constitutional right or federal law under which Ms. Johnson's claims arise. Moroever, all of her claims stem from the allegation that Loyola breached the terms of the release; this breach of contract allegation is rooted in state law. Thus, on the face of her well-pleaded Complaint, Ms. Johnson fails to plead a colorable claim "arising under" federal law.

In her opposition to Loyola's Motion to Dismiss, Ms. Johnson refers to several federal statutes, none of which were mentioned in her Complaint. Moreover, none of the statutes to which Ms. Johnson refers provide this Court with Subject Matter Jurisdiction. First, Ms. Johnson refers to 42 U.S.C. § 1983. However, she fails to put forth any evidence as to how Loyola, which is a private institution, acted under the color of state law to deprive her of any federally protected rights. Second, Ms. Johnson alleges that Loyola violated 5 U.S.C. § 552, the

Freedom of Information Act, "by withholding Plaintiff's college transcript after the federal mediation and embellishing the transcript by changing [it] on several occasions." (R. Doc. 16 at 3). However, this statute applies to information and documents controlled by the U.S. Government, not to information controlled by private institutions. Third, Ms. Johnson cites to 20 U.S.C. § 1011, which prevents institutions of higher education receiving federal financial assistance to use such assistance in a discriminatory manner. However, Ms. Johnson fails to put forth any facts establishing how Loyola, a private institution, is receiving federal assistance and/or using it in a discriminatory manner. Finally, Ms. Johnson argues that this Court has supplemental jurisdiction over her claims pursuant to 28 U.S.C. § 1367. To establish supplemental jurisdiction, Ms. Johnson must first establish that this Court has original jurisdiction over her claims, which she has failed to do. *See Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 293-94 (5th Cir. 2010). Considering the foregoing, Ms. Johnson has not made an adequate showing that federal question jurisdiction exists. Although this finding alone merits dismissal of the instant suit, the Court further analyzes this motion on the grounds of *res judicata*, as discussed below.

### IV.    DOCTRINE OF *RES JUDICATA*

#### a. Motion to Dismiss

As an initial matter this Court notes that dismissal under Rule 12(b)(6) on *res judicata* grounds may be appropriate if "the elements of *res judicata* are apparent on the face of the pleadings." *Dean v. Miss. Bd. of Bar Admissions,* 394 F. App'x 172,175 (5th Cir.2010) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.,* 20 F.3d 1362, 1366 (5th Cir.1994)). "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins,* 305 F. App'x 224, 227 (5th

Cir.2008) (citing *Lovelace v. Software Spectrum Inc.,* 78F.3d 1015, 1017–18 (5th Cir.1996)). A court may take judicial notice of public records such as prior judgments. *Norris,* 500 F.3d 454, 461 (5th Cir.2007). If a court decides to takes judicial notice of "matters in the public record, and items appearing in the record of the case, all may be considered along with the pleadings in Rule 12(b)(6) determinations." *Hall v. United States,* No. CIV. A. 6:06–CV–528, 2008 WL 276397, at *3 n. 5 (E.D.Tex. Jan.30, 2008). Here, the Court will take judicial notice of the Louisiana state court pleadings and consider them in its determination of the instant motion.

### b. Generally

*Res judicata* ensures the finality of a judgment. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767(1979). In essence, under *res judicata,* "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that [prior] action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citation omitted). Moreover, *res judicata* protects "[a]gainst 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor v. Sturgell,* 553 U.S.880,892 (2008) (quoting *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

Claim preclusion and issue preclusion collectively define the doctrine of *res judicata. Id.* "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor,* 553 U.S. at892 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968(2001)). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the

prior judgment, even if the issue recurs in the context of a different claim." *Id.* (quotations omitted).  The federal common law of claim preclusion

> *bars the litigation of claims that either have been litigated or should have been raised in an earlier suit.* The test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits.... When all four elements are present, *claim preclusion prohibits a litigant from asserting any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action.*

*Duffie v. United States,* 600 F.3d 362, 372 (5th Cir.), *cert. denied,* 131 S.Ct. 355, 178 L.Ed.2d 149 (2010) (quotation and citations omitted) (emphasis added).  As to the fourth element of federal claim preclusion, the court applies

> the transactional test to determine if two suits involve the same cause of action. "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose."…. [I]t is immaterial that some of the legal theories [the plaintiff] relies on differ from those in [the prior] complaint. "*The critical issue is whether the two actions are based on the same 'nucleus of operative facts.'*"

*Cuauhtli v. Chase Home Fin. LLC,* 308 F. App'x 772, 774 (5th Cir.2009) (quoting *Test Masters,* 428 F.3d at 571) (emphasis added).

### c.  Louisiana *Res Judicata* Law Applies

In Louisiana, the doctrine of *res judicata* is established by statute, which provides that "a valid and final judgment is conclusive between the same parties" in the following circumstances: "If the judgment is in favor of the defendant, *all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.*" La.Rev.Stat. § 13:4231(2) (emphasis added). Thus, the statute "precludes re-litigation of claims

and issues arising out of the same factual circumstances when there is a valid final judgment."

*Myers,* 43 So.3d at 210 (citing *Ave. Plaza, L.L.C. v. Falgoust,* 676 So.2d 1077, 1079 (La.1996)).

Therefore, under Louisiana law, defendants in the instant case must establish that

> (1) the [prior state court] judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Myers,* 43 So.3d at 211 (quoting *Burguieres v. Pollingue,* 843 So.2d 1049, 1053 (La.2003)).

"[T]he chief inquiry is whether the second action asserts a cause of action which arises out of the same transaction or occurrence that was the subject matter of the first action.' " *Burguieres,* 843 So.2d at 1053. The Louisiana res judicata statute "is modeled on federal preclusion doctrine and the Restatement of Judgments, [so that] federal jurisprudence may be consulted when the relevant Louisiana cases leave doubt as to the meaning of the statute." *Sevin v. Parish of Jefferson,* 632 F.Supp.2d 586, 594 (E.D.La.2008) (Vance, J.) (citing *In re Keaty,* 397 F.3d 264, 271 (5th Cir.2005)).

### a. Analysis

The Court finds that Defendants have shown that the Louisiana state court disposed of the case on the merits. Accordingly, *res judicata* applies. Defendants attach Ms. Johnson's petition and her first supplemental and amending petition in Louisiana state court proceedings, the Louisiana state court's judgment granting Loyola's motion for summary judgment, and the Fourth Circuit Court of Appeal's judgment affirming the trial court's judgment in part and remanding it in part for further proceedings regarding damages. The Judgment of the Louisiana Fourth Circuit Court of Appeal regarding Ms. Johnson's breach of contract claim was both valid and final in satisfaction of the first two elements of the test for the preclusive effect of a judgment. Additionally, the third preclusion element regarding the identity of the parties is

satisfied as the parties in both the state court suit and the federal court action—Loyola and Ms. Johnson—are identical.

With regard to the fourth element, each claim asserted in this federal action was either brought in the first action or was available at the time of the final judgment in the first action. Ms. Johnson's state court petition and Complaint were exceedingly similar and the causes of actions asserted stem from the same events. Thus, the fourth preclusion element is satisfied. Similarly, the fifth, final, and most critical element, which asks whether the second action arises out of the same transaction or occurrence that was the subject matter of the first action, is satisfied. Ms. Johnson's claims in her federal complaint arise out of identical factual circumstances as the claims in her First Action in which she sought to hold Loyola liable for specific performance and damages for breach of contract. Specifically, as Defense counsel accurately asserts, both her Complaint and her state court action involve Loyola and Ms. Johnson entering into a confidential release on February 18, 2008, which Ms. Johnson alleges was breached by Loyola and allegedly caused her damages. Thus, her claims in both actions arise out of the same transaction and occurrence—namely, performance by the parties of the confidential release. Because Loyola has shown that the Louisiana matter was a final disposition on the merits and the instant litigation bears the same parties and arises out of the same transaction or out of the same or related facts as the Louisiana state suit, this action is barred by *res judicata*.

## V.     CONCLUSION

Considering the foregoing, IT IS ORDERED that Defendant's Motion to Dismiss (R. Doc. 242) is GRANTED.

New Orleans, Louisiana this 21st day of August, 2015.

_____
United States District Judge